IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. JEROME MARCUS : | |
| : | |
| : | CIVIL ACTION |
| v. : | NO. 21-1037 |
| : | |
| TRUST FINANCIAL CORPORATION : | |
| f/k/a BB&T BANK; TRUIST ADVISORY : | |
| SERVICES, INC. d/b/a BB&T : | |
| WEALTH f/k/a BB&T SECURITIES LLC; : | |
| TRUIST BANK f/k/a BRANCH BANKING : | |
| &TRUST CO and SUNTRUST BANK : | |

### MEMORANDUM OPINION

**SCHMEHL, J.**  **/s/ JLS**                                                                       May 13, 2022

      Plaintiff alleges that defendants "simply ceased to provide the management services they had promised to perform" "during the first six months of 2020 as the Coronavirus disease spread throughout the world" for his investment portfolio. Specifically, plaintiff complains that his prior investment advisors left or were terminated, he disapproved of his new investment advisors, his new advisors would not adequately answer his communications, a new investment strategy was proposed that ran contrary to one of his investment goals, he was never fully informed of the strategic changes to his accounts, and his portfolio incurred a roughly 70% decline in trading activity in the first six months of 2020 compared to 2019. As a result, plaintiff alleges that defendants breached a contract and their fiduciary duty of care. Plaintiff's allegations are sufficient to state a plausible claim for relief; defendants' Motion to Dismiss is denied.

### I.   Factual Background

      Plaintiff Dr. Jerome Marcus is a physician who opened "Omega Laboratories," "a very successful pathology testing laboratory." (ECF #8, Amended Complaint, at 4.) Omega sold for "substantial consideration" which fueled plaintiff's investment account that he held with

defendants.[1] Plaintiff's investment account is governed by the "Investment Policy Statement," the contract at issue. (ECF #8, Exhibit A.) The breach of contract provisions that moves plaintiff's case past the pleading stage is within the contract's "rights and responsibilities" provision. It states:

"BB&T will be responsible for:

1. Implementing the investment policy as well as advising the Committee on the status of implementation and execution[2]

2. Selecting, rebalancing, terminating, and making tactical shifts between investment managers and asset classes

3. Monitoring each underlying investment manager's strategy given the portfolio's overall investment strategy, philosophy and objective

4. Providing reasonable information requested by the committee, and reports detailing investment activity, market and economic data and performance data of the portfolio(s) and underlying managers on a regular basis

5. Sourcing and managing the liquidity needs of the portfolio as it relates to periodic withdrawals and contributions

6. Observing the requirements and the principles of prudent investment management

---

[1] Defendants are an abundance of related entities, and some defendants contest whether they are appropriately named defendants. Early discovery shall focus on which entities are the appropriate defendants. To this extent, the parties should attempt to stipulate which defendants are the appropriate entities, and if the defendants cannot, defendants may file a Motion requesting dismissal of certain defendants based upon plaintiff's failure to correctly name defendants.

[2] Plaintiff "will designate an individual or group of individuals who will act as the Investment Committee . . with the following responsibilities:" work with BB&T regarding investment objectives, changes, monitoring performance and risk factors, reviewing implementation of the investment program, and addressing potential conflicts of interests.

> 7. Broadly diversify the investments in order to reduce risk unless otherwise directed specifically within this document by the Committee"

(ECF #8, Exhibit A.) Plaintiff argues that defendants violated these provisions based upon personnel issues, communication issues, and the lack of trading in his portfolio during the first six months of 2020.

After plaintiff's original investing company was acquired by BB&T in 2015, the CEO told plaintiff "if it ain't broke, don't fix it" regarding his investment advisors. But "[i]n the first quarter of 2020, a new group of investment advisors . . . contacted [plaintiff] and informed him that they intended to deploy new models to govern all aspects of his Portfolio." The new model was supposedly "better" and emphasized dividends, however, plaintiff demurred and stated that he did not want dividends given tax implications as indicated in the contract. The advisors purportedly had nothing to say in response, nor did they ever inform plaintiff as to how the new model was "better" despite plaintiff's inquiries.

Sometime thereafter, plaintiff was instructed to direct all inquiries about this portfolio to a new point of contact rather than his long-time advisors. Plaintiff was also told that Terry Morris, who "managed a very substantial portion of his Portfolio for over twenty years, would no longer be handling the Portfolio going forward." Plaintiff refused and insisted on his long-time advisors. "Despite his inquiries," plaintiff was never informed why or when his longtime advisor Terry Morris was terminated, and was "never provided with the identity of the personnel who would take over." In particular, he was never notified who would take over his mutual fund subaccount, which Mr. Morris managed, and his new point of contact, Jim Fisher, "refused to inform [plaintiff] of what changes if any they intended to make (if any) [to plaintiff's] mutual fund subaccount." But plaintiff was told about changes to his Large-Cap and Mid-Cap

subaccounts. According to plaintiff, the proposed change would have resulted in "disastrous" "massive capital gains subject to tax" which plaintiff had previously stated that he did not want.

After and during these personnel issues, the beginning of 2020 arrived which was followed by the COVID-19 pandemic in late February and early March 2020. The pandemic brought tumultuous times to financial markets, and plaintiff lost considerable sums of money. Plaintiff pleads that his monetary losses were not necessarily caused by COVID's impact on the markets, but rather, his losses were caused by defendants who "were not paying attention and were wholly derelict." (ECF #13, Plaintiff's Opposition, at 2.) Defendants could have avoided the losses had they not left his investments "completely unattended." (ECF #8, Amended Complaint, at 14.)

During the first six months of 2020, "across [plaintiff's] Portfolio," the sales aggregated $3,026,845 and purchases aggregated $2,017,119. In comparison to the first six months of 2019, the sales aggregated $10,319,068 purchases aggregated $12,013,416. (*Id.*)

Also during the first six months of 2020, plaintiff's mutual fund subaccount, accrued no purchases and "only $625,689.00 in sales." (*Id.*) In comparison, that subaccount accrued $6,890,604 in purchases and $9,977,857 in sales in the first six months of 2019.

Plaintiff argues that these 83.2% and 71% declines are indicative of defendants being asleep at the wheel of his investments. This lower trading activity coupled with the personnel and communication issues, according to plaintiff, breach the parties' contract and their fiduciary duties. Defendants move to dismiss by arguing that plaintiff fails to plead that a specific contractual provision was breached, and in any event, plaintiff's factual predicate does rise to a breach of contract nor breach of any fiduciary duties.

II. **Standard of Review**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); *see also Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010).

In our analysis of a motion to dismiss, the Court of Appeals allows us to also consider documents "attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record,

orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

### III. Analysis

Under Pennsylvania law, to prove a breach of contract, the plaintiff must prove "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Udodi v. Stern*, 438 F.Supp.3d 292, 299 (E.D. Pa. 2020). Under Pennsylvania law, to prove a breach of fiduciary duty, the plaintiff must prove (1) a fiduciary duty; (2) defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which defendant was employed; (3) an injury; and (4) the defendant's failure to act solely for plaintiff's benefit was a "real factor in bringing about plaintiff's injuries." *Conquest v. WMC Mortg. Corp.*, 247 F. Supp. 3d. 618, 633 (E.D. Pa. 2017) (quoting *Dinger v. Allfirst Fin., Inc.*, 82 Fed. App'x 261, 265 (3d Cir. 2003)).

The cases the parties cite are illustrative. In *Maliner v. Wachovia Bank, N.A.*, plaintiffs complained that defendant grossly mismanaged plaintiffs' investments whereas defendant argued on summary judgment that plaintiffs' losses were caused by the decline in the stock market, plaintiffs were not guaranteed any returns, and defendant had full discretion in making investments. 2005 WL 670293, *1-2 (S.D. Fla. Mar. 1, 2005). The court found a triable issue as to whether the bank invested pursuant to the contract's agreed upon objectives because plaintiffs submitted to the bank that they wanted conservative investments, wanted to protect their principle, were content with modest returns, and had complained in writing that certain investment policy statements did not accurately reflect plaintiffs' investing instructions. *Id.* at *3, 10. Similarly, in *Ambac Assur. UK Ltd. v. J.P. Morgan Inv. Manage. Inc.*, plaintiff argued "that

while J.P. Morgan was actively divesting itself of the risky subprime mortgages it had originated, the defendant was doing nothing about riskier subprime mortgages originated by others and held in the subject accounts." 88 A.D.3d 1, 8 (N.Y. App. 2011) (footnote omitted). Defendant argued that the contract did not spell out any specific securities that must or must not be invested in, and they never exceeded diversification requirements. *Id.* at 10-11. In rejecting defendant's motion to dismiss the court held that "notwithstanding [defendant's] adherence to certain limitations, the defendant failed to manage the accounts in accordance with the agreed upon objective" which was for "reasonable income and high level of safety of capital." *Id.* at 11. *See Swartz v. Deutsche Bank*, 2008 WL 1968948, *24 (W.D. Wash. May 2, 2008) ("Plaintiff fails to articulate which contract Presidio breached, or how it breached a contract, and refers only generally to all 'Defendants' in his allegations.")

Here, the contract places the following responsibilities on defendants amongst others: (1) Implementing the investment policy as well as advising the Committee on the status of implementation and execution; (2) Selecting, rebalancing, terminating, and making tactical shifts between investment managers and asset classes; (3) Monitoring each underlying investment manager's strategy given the portfolio's overall investment strategy, philosophy and objective; and (4) Providing reasonable information requested by the committee, and reports detailing investment activity, market and economic data and performance data of the portfolio(s) and underlying managers on a regular basis.

In comparison, plaintiff's allegations of "mismanagement" are as follows: the departure and ousting of his longtime investment advisors, implementing new advisors who he did not approve of, proposing a new investment strategy that he did not approve of, being unresponsive to his communications requesting information about the aforementioned, and an 83% lower

trading volume in his portfolio during the first six months of 2020 while this and the COVID-19 pandemic were taking place.

These allegations are a sufficient factual predicate to state a plausible claim for breach of contract and breach of fiduciary duty. This case will be best adjudicated on a fully developed factual record as to what truly happened with plaintiff's investment account during this timeframe.

## IV.   Conclusion

For the reasons above, defendants' Motion to Dismiss is Denied. An accompanying Order follows.

                                                                         BY THE COURT:

                                                                         */s/ Jeffrey L. Schmehl*
                                                                         **Judge Jeffrey L. Schmehl**